# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ABEBE G. NEGASH,

                Plaintiff,                CASE NO. 17-10256
                                          HON. DENISE PAGE HOOD

v.

DEVRY UNIVERSITY,
DEPARTMENT OF EDUCATION,

                Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [#18; #28]

### I.      BACKGROUND

#### A. Procedural Background

On January 26, 2017, Plaintiff Abebe G. Negash ("Negash"), *pro se*, brought this action against Defendants DeVry University ("DeVry") and the Department of Education ("DOE") (collectively, "Defendants"). (Doc # 1)   Negash alleges Defendant DeVry is guilty of misrepresentation and/or misuse of federal funds in violation of Title IV of the Higher Education Act ("HEA").  Negash also alleges Defendant DOE should be held liable for a lack of accountability and oversight over DeVry's handing of federal funds in violation of HEA.  Negash seeks injunctive relief and monetary damages for the alleged violations.

This matter is before the Court on Defendant DeVry's Motion to Dismiss the Complaint for lack of personal jurisdiction (Fed. R. Civ. P. 12(b)(2)), improper venue (Fed. R. Civ. P. 12(b)(3)), and for failure to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)) (Doc # 18); and the DOE's Motion to Dismiss for lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)) and failure to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)). All Responses and Replies have been filed. (see Doc # 20; # 23; # 32; # 33)

For the reasons set forth below, the claims against Defendants DeVry University and the Department of Education are **DISMISSED**.

### B. Factual Background

In March 2010, Negash lived near Seattle, Washington. Around that time, he met a recruiter from DeVry University while at an unemployment office. (Doc # 1, Pg ID 6) Negash claims the recruiter made "promises of future employment." (*Id.*) Negash claims he enrolled at DeVry based on statements made by the recruiter, information listed on DeVry's website, the number of students that graduate, and potential earnings after graduation. (*Id.*) DeVry had campuses in Lynwood, Washington and Federal Way, Washington at that time. (Doc # 18, Pg ID 67) From March 2010 to April 2011, Negash was enrolled in five classes at DeVry's Keller Graduate School of Management at the Federal Way, Washington campus. (Doc # 18, Pg ID 66) In order to pay for his graduate school tuition and

cost of living, Negash borrowed $28,875 in federal student loans.  He used $11,186 of his student loans to pay tuition to DeVry.  (Doc # 18, Pg ID 67).

Negash received notice on May 28, 2010 from DeVry's advising office that, among other things, "students at the graduate level are expected to achieve and maintain a minimum 3.00 GPA."  (Doc # 18-3, Pg ID 93)  By the end of the Fall 2010 semester, Negash's term GPA was a 2.70 after withdrawing from two of the five courses he enrolled in for the term.  (Doc # 18-5, Pg ID 132)  On March 7, 2011, Negash was dismissed from the DeVry University Keller Graduate School due to his failure to maintain the minimum academic requirements.  (Doc # 18-6, Pg ID 134)  DeVry notified Negash that he could remain enrolled and active in his courses, and that he could appeal his dismissal within 7 days of receiving notice of the dismissal.  *Id.*  Negash did not appeal.  On March 9, 2011, Negash called DeVry and stated that his dismissal was unfair, and that DeVry dismissed him because he "could no longer receive FAFSA money."  (Doc # 18-8, Pg ID 140)

Negash then filed a complaint with the State of Washington Higher Education Coordinating Board ("HECB"), stating that he was concerned about "academic and financial deception" at DeVry.  (Doc # 18-2, Pg ID 89)  The Washington HECB "found no specific examples in the documents . . . that showed the type of academic or financial deception [Negash] claim[s] occurred."  (Doc # 18-9, Pg ID 145)  The HECB further found "no substantial evidence that DeVry

University has violated any provision of the rules governing degree-granting schools." (Doc # 18-9, Pg ID 147)

On January 23, 2017, Negash electronically submitted an Application for Borrower Defense to Loan Repayment to the DOE, and the DOE "stopped all collection activity on his debt February 1, 2017 . . . and inactivated the debt from the Treasury Offset Program on March 3rd, 2017." (Doc # 28-1, Pg ID 290, Doc # 28, Pg ID 275)

## II.   ANALYSIS

### A. Standards of Review

#### 1. *Rule 12(b)(1)*

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014) (*citing United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In the case of a facial attack, and the court takes the allegations of the complaint as true to determine whether the plaintiff has alleged a basis for subject matter jurisdiction. *Id.*

In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists,

including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id.* Plaintiff bears the burden of establishing that subject matter jurisdiction exists. *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

### 2. *Rule 12(b)(2)*

Plaintiff bears "the burden of establishing the district court's personal jurisdiction" over the Defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). As there has been no evidentiary hearing on the matter, the court will "consider the pleadings and affidavits in a light most favorable to the plaintiff." *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458-59 (6th Cir. 1991). Granting a motion to dismiss is only proper "if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *Id.* (emphasis in original).

General jurisdiction is satisfied in a forum if the defendant's contacts within that forum are "so constant and pervasive as to render it essentially at home." *Diamler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (citations omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* at 760. Alternatively, personal

jurisdiction can be satisfied through specific jurisdiction. Specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012) (citation omitted). Whether a defendant's claim arises out of contacts in the forum is determined applying three criteria. *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). First, the defendant must "purposefully avail himself of the privilege of acting in the forum state . . . ." *Id.* Second, the "cause of action must arise from the defendant's activities there." *Id.* Third, the acts of the defendant must demonstrate a "substantial enough connection with the forum state . . . ." *Id.*

### 3. *Rule 12(b)(3)*

Federal Rule of Civil Procedure 12(b)(3) provides for a motion to dismiss based on improper venue. "On a motion to dismiss for improper venue, the plaintiff bears the burden of proving that venue is proper." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1022 (E.D. Mich. 2002). A dismissal for improper venue may be based on Rule 12(b)(3), but the requirements for what is a proper venue are established by 28 U.S.C. § 1391(b). *Kerobo v. Southwestern Clean Fuels*, *Corp*., 285 F.3d 531, 538 (6th Cir. 2002). The statute reads:

> (b) Venue in general.-- A civil action may be brought in--

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

If venue is found to be improper, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a).

### 4. *Rule 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court, however, need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the plaintiff must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### 5. Pro Se Litigants

Federal courts hold *pro se* complaints to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, *pro se* litigants are not excused from failing to follow basic procedural requirements.

*Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988). A *pro se* litigant "must conduct enough investigation to draft pleadings that meet the requirements of the federal rules." *Burnett v. Grattan*, 468 U.S. 42, 50 (1984).

## A. Rule 12 (b) Motions

### 1. *Personal Jurisdiction Over Claim Against DeVry*

Pursuant to the *Diamler* standard, satisfying general jurisdiction with respect to a corporation "require[s] more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015). As a result, general jurisdiction is "difficult to establish . . . in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). DeVry is an Illinois corporation with its principal place of business, including senior leadership, in Downers Grove, Illinois. (Doc # 18-1, Pg ID 84) DeVry has no campuses in the state of Michigan. *Id.* Negash concedes that the only connection DeVry has to Michigan is through its internet presence via its website. (Doc # 20, Pg ID 199-200)

Negash asserts: "[I]f you're interested in taking courses or completing your entire degree program online, DeVry University offers online certificates . . . to students nationwide, including Michigan. General jurisdiction where DeVry is

clearly having 'continuous and systematic' ties with the Michigan state." (Doc # 20, Pg ID 191). Negash cites *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002), to support his argument for general jurisdiction. The plaintiff in *Neogen Corp.* argued for general jurisdiction based on defendant's internet presence in Michigan, including the defendant providing passwords to Michigan residents to access their test results, which created a contract for the defendant's services. *Id.* However, the court in *Neogen Corp.* did not rule on whether there was general jurisdiction because jurisdiction was granted based on Michigan's long-arm statue under limited jurisdiction due to the existence of the contracts and other business transactions in Michigan. *Id.* at 889.

Similarly, Negash cites *First Tennessee Nat. Corp. v. Horizon Nat. Bank*, 225 F. Supp. 2d 816 (W.D. Tenn. 2002), in support of his general jurisdiction argument to emphasize that "a court found personal jurisdiction existed where the defendant's website stated the bank could lend in "[all] 50 States." (Doc # 20, Pg ID 191). However, the court in *First Tennessee Nat. Corp.* found jurisdiction based on specific jurisdiction, and held that an internet presence is insufficient to establish general jurisdiction. *Id.* (citing *Neogen Corp.,* 282 F.3d at 890).

Finally, Negash cites *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813 (E.D. Mich. 2006), where the court found jurisdiction based on limited personal jurisdiction, stating: "[L]imited jurisdiction extends only to claims arising from the

Defendants' activities within Michigan or those which had an in-state effect." *Id.* at 818. The court in *Dedvukaj* found activities in Michigan, or those which had an in-state effect, to include business transactions in Michigan as well as communication between the parties while at least one party was in Michigan. *Id.* at 819. Negash fails to allege or otherwise indicate that there was any business transaction or communication between Negash and DeVry while Negash was living in Michigan.

DeVry's internet presence alone is not a sufficient basis for general jurisdiction. Again, DeVry is not incorporated in Michigan nor does it have its principal place of business in Michigan. The Court concludes that it lacks general jurisdiction.

Personal jurisdiction can also be satisfied through specific jurisdiction. *Helicopteros Nacionales*, 466 U.S. at 414. Michigan law recognizes two bases for personal jurisdiction over corporations, general and specific. Negash claims that specific jurisdiction applies to DeVry because "[p]ersonal jurisdiction is of internet activities that DeVry is having 'purposely availing' itself of the benefits of both Michigan and Washington state residents . . . [T]he company has a very active and interactive website through which its target population can access any information from anywhere in cyberspace." (Doc # 20, Pg ID 189).

Although Negash does not raise it, most of his arguments for general jurisdiction are predicated on specific jurisdiction, or Michigan's long-arm statute. Mich. Comp. Laws § 600.715 states:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Negash fails to allege that any of the aforementioned relationships apply in this case between DeVry and Michigan.

Negash, again, relies on the three cases discussed above to argue that DeVry's internet presence is enough to purposefully avail itself of the privileges of doing business in Michigan. *See Neogen Corp.*, 282 F.3d at 891 (finding that the defendant purposefully availed itself by providing passwords to Michigan residents to access their test results, creating a contract for the defendant's services); *First Tennessee Nat. Corp*, 225 F. Supp. 2d at 816 (finding purposeful availment where specific and conscious actions were taken by the defendant, including maintaining a website that granted the ability to obtain mortgages loans, expert loan advice, and receive daily commentary) (citing *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002) (finding purposeful availment where the defendant maintained a website on which Ohio residents could register domain names and accepted the business of Ohio residents))); *Dedvukaj*, 447 F. Supp. 2d at 822 (finding that an interactive website constituted purposeful availment due to: communication between buyers and sellers, email messages, telephone to communicate with potential buyers, a toll-free number, and acceptance of payment through the mail from Michigan, including fees calculated for shipping to Michigan).

The Court finds that DeVry has not purposefully availed itself of the privilege of doing business in Michigan because Negash has failed to allege that DeVry provided passwords or otherwise created a contract with Michigan residents, that DeVry maintained communication through their website with any

Michigan residents, or that any other specific and conscious actions were taken by DeVry to target Michigan residents.

Even if the Court found that DeVry had purposefully availed itself of the privilege of doing business in Michigan through it's website, Negash has failed to allege any facts that would indicate his cause of action arises from DeVry's activities in Michigan, or that DeVry's acts demonstrate a substantial enough connection to Michigan. *See Southern Machine Co.*, 401 F.2d at 381. None of the events in the Complaint happened in Michigan and none of the actions taken by DeVry happened in Michigan. DeVry has no connection to Michigan other than its internet presence. Negash has not met his burden of proof. The Court concludes that it lacks specific jurisdiction.

DeVry's Motion to Dismiss for lack of personal jurisdiction is **GRANTED**.

## 2. *Venue Regarding Negash's Claim Against DeVry*

A dismissal for improper venue may be based on Rule 12(b)(3), but the requirements for what is a proper venue are established by 28 U.S.C. § 1391(b). *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 538 (6th Cir. 2002). A civil action may be brought (1) where the defendant resides, (2) where a substantial part of the events giving rise to the claim occurred, or, (3) where neither of these elements are satisfied, in another district in which an action may otherwise be

brought as provided in the section. 28 U.S.C. § 1391(b). If venue is found to be improper, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district…in which it could have been brought." 28 U.S.C. § 1406(a). DeVry argues that Negash's Complaint is dismissed for improper venue.

DeVry is not a resident of Michigan. (Doc # 18-1, Pg ID 84). A substantial part of the events leading up to the Complaint occurred in Washington state, and none of them in Michigan. (Doc # 1) The Court finds that venue is not proper in the Eastern District of Michigan.

There are alternative, more appropriate forums in which this action could have been brought. DeVry concedes that it can properly be sued in, either the Northern District of Illinois or the Western District of Washington. Because the interests of justice and the rules of civil procedure call "to secure the just, speedy, and inexpensive determination of every action and proceeding" (Fed R. Civ. P. 1), this Court could transfer this case to either district.

Section "1406(a) provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits in the district court where the action was originally brought. That defect may be either improper venue or lack of personal jurisdiction." *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980). Because this Court finds both a lack of personal jurisdiction and improper venue in this case, and because there are other, more appropriate venues, the Court may

transfer this Complaint for consideration. However, as will be discussed below, the Court will not transfer this case because Negash fails to state a claim upon which relief can be granted. Transfer will not serve the interests of justice.

### 3. *Subject Matter Jurisdiction Over Negash's Claim Against the DOE*

"If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Dealer Computer Services, Inc. v. Dub Herring Ford*, 547 F.3d 558, 560 (6th Cir. 2008) (quoting *River City Capital, L.P. v. Bd. of County Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007)). "Thus, the doctrine serves as a bar to judicial review whenever a court determines a claim is filed prematurely." *Id.* Ripeness is "a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-808 (2003) (internal quotation omitted).

The essential factors to consider when determining the ripeness of a claim are: "(1) the likelihood that the harm alleged by the party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage in the proceedings; and (3) whether the factual record is sufficiently developed to

produce a fair adjudication of the merits." *Id.* (citing *USPS v. Nat'l Assoc. of Letter Carriers, AFL-CIO*, 330 F.3d 747, 751 (6th Cir. 2003)).

Under the Higher Education Act, 20 U.S.C. § 1087e(h), a loan borrower may assert defenses to repayment of their loans: "Notwithstanding any other provision of State or Federal law, the Secretary shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan made under this part." 20 U.S.C. § 1087e(h). These regulations that may give rise to a defense include any "act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law." 34 C.F.R. § 685.206(c). If the defense asserted by the borrower is successful, "the Secretary notifies the borrower that the borrower is relieved of the obligation to repay all or part of the loan . . . [and] affords the borrower such further relief as the Secretary determines is appropriate under the circumstances." *Id.*

On January 23, 2017, Negash electronically submitted an application for Borrower Defense to Loan Repayment to the DOE, and the DOE "stopped all collection activity on his debt February 1, 2017 . . . and inactivated the debt from the Treasury Offset Program on March 3rd, 2017." (Doc # 28-1, Pg ID 290, Doc # 28, Pg ID 275) The DOE has not yet made a determination on the borrower defense raised by Negash. "A claim is not ripe for adjudication if it rests upon

contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted). First, this claim is not yet ripe for judicial review because a defense has been filed with the DOE, and the agency has not yet made a final determination on the future of Negash's loans.

Second, the DOE suspended efforts on Negash's debt collection pending an administrative decision on his borrower application defense. (Doc # 28, Pg ID 284) Negash will not endure additional hardship if these proceedings are dismissed because his loan repayment is suspended until the agency makes a final decision concerning the defense.

Finally, a sufficiently developed factual record is required for judicial review. *USPS*, 330 F.3d at 751. The factual record concerning Negash's loans up until this point includes only his default and his notification from the DOE that his loans were transferred to the DOE's debt collection unit. (Doc # 28, Pg ID 273) The record has not been sufficiently developed so as to include the current, ongoing defense application and the DOE's forthcoming response.

Negash has not responded with any arguments to the contrary. The Court finds that his claim against the DOE is unripe. The DOE's Motion to Dismiss for lack of subject matter jurisdiction is **GRANTED**.

**4.** *Failure to State a Claim*

Negash's claims against DeVry and the DOE rest upon the alleged "lack of accountability and oversight" by the DOE regarding Negash's federal loans, and the alleged "misleading and misuse of federal funds" by DeVry. (Doc # 1, Pg ID 6) Negash applied for and obtained his federal loans through the Higher Education Act of 1965 ("HEA"), and accordingly, brings his claim against both DeVry and the DOE under Title IV of the HEA.

The HEA does not create a private right of action. *Thomas M. Cooley Law School v. The Am. Bar Assoc.*, 459 F.3d 705, 710 (6th Cir. 2006). The HEA "expressly empowers only the Secretary of Education—not debtors—with the authority to enforce the HEA and rectify HEA violations." *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1123 (11th Cir. 2004). In examining whether a private right of action can be inferred from the HEA, courts have considered four factors. *Thomas M. Cooley Law School*, 459 F.3d at 711. The factors are: (1) whether the plaintiff is of the class for which the benefit of the statute was enacted; (2) whether an implied private right of action is clear from the legislative history; (3) whether an implied private right of action is consistent with the legislative scheme; (4) finally, whether the cause of action is one traditionally relegated to state law. *Id.*

"The HEA was passed to benefit students." *Id.* Negash falls under this category. However, the Sixth Circuit has held that "implying a private right . . .

would be contrary to the legislative scheme, as the statute explicitly provides for enforcement through an administrative action brought by the Secretary." *Id.* "Courts should imply a private right of action only if it finds affirmative evidence that Congress intended to create such a right." *Id.* Furthermore, "it is clear that the intent of the Legislature was to protect the government and the lending institution from the misapplication of the loan proceeds toward purposes not intended and unrelated to education." *Hudson v. Academy of Court Reporting, Inc.*, 746 F.Supp. 718, 721 (S.D. Ohio, 1990). Finally, this is not a claim that would typically be relegated to state law because the HEA's purpose is to give federal courts exclusive jurisdiction concerning disputes about federal loans. *Cf. Thomas M. Cooley Law School*, 459 F.3d at 711 (holding that the HEA explicitly provides for enforcement of the statute through an administrative action brought by the Secretary of Education, giving federal courts exclusive jurisdiction for claims concerning the HEA). The Court concludes that there is no express or implied private cause of action under the HEA. *See Id.* at 710.

In support of his argument that his claims should survive despite the lack of a private cause of action under the HEA, Negash relies on the False Claims Act ("FCA"): "[W]hen [the DOE] failed to enforce such laws in breach of duties . . . Department of Education permits private citizens to sue on behalf of the United States under the whistleblower provisions of the [FCA], for deceptive educational

services and conduct that victimized students, unlawfully recruited students, deceptive and misleading recruiting practices that result in harm in financial losses . . . ." (Doc # 20, Pg ID 193)

The FCA provides for a false claim when a party:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

(D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

(E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government,

or a member of the Armed Forces, who lawfully may not sell or pledge property; or

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

31 U.S.C. 3792.

The FCA is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006) (quoting *United States v. Neifert–White Co.,* 390 U.S. 228, 232 (1968)).

To state a claim under the FCA, the plaintiff must sufficiently plead:

[1] that the defendant [made] a false statement or create[d] a false record [2] with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information; [3] that the defendant . . . submitted a claim for payment to the federal government; . . . and [4] that the false statement or record [was] material to the Government's decision to make the payment sought in the defendant's claim.

*U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016) (quoting *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 618 F.3d 505, 509 (6th Cir. 2010)).

Additionally, "[c]omplaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity." *Chesbrough v. VPA, P.C.,* 655 F.3d 461, 466 (6th Cir. 2011). "Under Rule 9(b), a party alleging fraud or mistake 'must state with particularity the circumstances constituting fraud or mistake.' Fed.R.Civ.P. 9(b); *see also U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 505 (6th Cir. 2008) (noting the 'knowledge' element of FCA claims 'does not need to be pled with particularity')." *U.S. ex rel. Sheldon,* 816 F.3d at 407. Specifically, a plaintiff must "allege the time, place, and content of the alleged misrepresentation . . . the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 643 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993)).

A higher education institution may receive federal subsidies under Title IV and the HEA. It must enter into a Program Participation Agreement with the DOE, in which it agrees to accept and follow certain statutory requirements. One of these requirements is a ban on incentive compensation for employees of the institution, which bans the institution's recruiters from being compensated based

on each student they enroll. The ban prohibits schools from "provid[ing] any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance." 20 U.S.C. § 1094(a)(20). This ban is designed to decrease the incentive for recruiters to "sign up poorly qualified students who will derive little benefit from the subsidy and may be unable or unwilling to repay federally guaranteed loans." *Hendow v. University of Phoenix*, 461 F.3d 1166, 1168 (9th Cir. 2006) (quoting *United States ex rel. Main v. Oakland City Univ.,* 426 F.3d 914, 916 (7th Cir. 2005)).

In *Hendow v. University of Phoenix*, the Sixth Circuit found that realtors' FCA claims survived a motion to dismiss where they alleged that the university for which they worked knowingly violated the incentive compensation ban by "compensate[ing] enrollment counselors . . . based directly upon enrollment activities, ranking counselors according to their number of enrollments and giving the highest-ranking counselors not only higher salaries but also benefits, incentives, and gifts." *Id.* at 1169. Further, the realtors alleged that in order to "deceive the DOE, the university [had created] two separate employment files for [each of] its enrollment counselors—one 'real' file containing performance reviews based on improper quantitative factors, and one 'fake' file containing

performance reviews based on legitimate qualitative factors." *Id.* The DOE allegedly only saw the fake files. *Id.* Finally, the realtors alleged that the university, with full knowledge that it was ineligible for Pell Grant funds because of its violation of the incentive compensation ban, nevertheless submitted requests for those funds directly to the DOE, resulting in a direct transfer of the funds into a university account. *Id.*

In the present case, Negash claims there was a "misuse" of his federal loans by DeVry in the form of deceptive education practices. (Doc # 1, Pg ID 6) In support of his argument, Negash cites a 2016 settlement agreement between DeVry and the DOE. (Doc # 20, Pg ID 195) This settlement involves, among other stipulations, DeVry agreeing to "cease publishing or otherwise using the Since 1975 Representation." (Doc # 18-10, Pg ID 149)

From at least 2008 until at least August 2015, DeVry made representations to prospective students regarding the post-graduation employment outcomes, but DeVry was unable to substantiate the truthfulness of these representations. (Doc # 18-11, Pg ID 160) The settlement referenced by Negash includes DeVry agreeing to immediately cease any "representations that state that (1) since 1975, 90% (or some close variation thereof) of [DeVry] graduates in the active job market were employed in career-related positions within 6 months of graduation . . . ." (Doc #

18-10, Pg ID 149-150)  The effective date of this limitation on DeVry's marketing materials was February 16, 2016.  (Doc # 18-11, Pg ID 171)

Negash does not present any evidence that DeVry falsely certified compliance with a government statute as a condition for payment.  Negash does not allege any facts that suggest DeVry violated the incentive compensation ban for employees of DeVry.  Negash does not present any facts that suggest DeVry presented misleading information in order to receive federal loans for its students. The settlement agreement which Negash cites does not include any facts that suggest DeVry provided fraudulent material, knowingly or otherwise, to the DOE in order to satisfy the requirements of the Program Participation Agreement, required to receive federal funding.  Under these circumstances, Negash has not met Rule 9(b)'s particularity requirement.  Negash has failed to state a claim against DeVry under the FCA.

Negash claims a "lack of accountability and oversight" by the DOE regarding the disbursement and use of his federal student loans.  (Doc # 1, Pg ID 6) The DOE seeks dismissal based on failure to state a claim under the Administrative Procedure Act ("APA").  (Doc # 28, Pg ID 279)  "The doctrine of sovereign immunity shields the United States from lawsuits." *Jackson v. United States*, 751 F.3d 712, 716 (6th Cir. 2014); *see also Dep't of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 260 (1999).  Suits brought against the United States are therefore

dismissed unless a claimant can point to an express waiver of sovereign immunity. *Dep't of the Army*, 525 U.S. at 260 (citing *FDIC v. Meyer,* 510 U.S. 471 (1994)); *see also Lane v. Pena,* 518 U.S. 187, 192 (1996).

The APA's judicial review provisions, 5 U.S.C. §§ 701-706, provide for some instances of waiver of sovereign immunity. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages . . . and stating a claim . . . shall not be dismissed." 5 U.S.C. § 702. Negash seeks money damages in addition to prevention of the garnishment of his wages and tax returns and removal of the loan from default. (Doc # 1, Pg ID 6) The APA cannot serve as a waiver of the Government's sovereign immunity for a claim for money damages. *Dep't of the Army*, 525 U.S. at 262.

Additionally, "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. As discussed above, there has been no final agency action on this issue, and the DOE's decision on Negash's borrower defense application remains pending. Again, Negash has failed to respond to the DOE's arguments. Negash has failed to state a claim against the DOE under the FCA.

## III.  CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that DeVry University's Motion to Dismiss (Doc # 18) is **GRANTED**.

IT IS FURTHER ORDERED that the Department of Education's Motion to Dismiss (Doc # 28) is **GRANTED**.

IT IS FURTHER ORDERED that this action is **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER ORDERED that Plaintiff's Motion to Stay (Doc # 34) and Plaintiff's Motion for Temporary Restraining Order (Doc # 40) are **DENIED AS MOOT**.

s/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  March 30, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager